# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| S&M NUTEC, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03-1033-CV-W-NKL |
| | ) | Case No. 04-0615-CV-W-NKL |
| T.F.H. PUBLICATIONS, INC., | ) | (Consolidated) |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is S&M Nutec, L.L.C.'s ("Nutec") Motion for Partial Summary Judgment on T.F.H. Publications, Inc.'s ("TFH") Counterclaim [Doc. # 162]. For the reasons set forth below, the Court denies in part and grants in part Nutec's Motion.

Also pending before the Court is TFH's Motion for Summary Judgment [Doc. # 164]. For the reasons set forth below, the Court denies TFH's Motion.

## I. Background[1]

### A. The Parties

Nutec is a Missouri corporation that makes and sells dog bone treats called Greenies.[2] Greenies are green dental treats for dogs that are used as breath fresheners. The

_____

[1]The parties in this case could not reach consensus on many of the factual aspects of this dispute. Both parties' factual assertions and rebuttals were rife with argument and innuendo. Therefore, the following factual background primarily highlights those facts which are undisputed. Facts that are in dispute are discussed in a later section.

[2]In its brief, Nutec attaches a ® symbol to the word "Greenies." The Court acknowledges that Nutec is trying to protect its mark, but the Court will not attach the symbol to the word "Greenies" in its

1

treats are green in color and they are shaped like the head of a toothbrush on one end and the knuckle of a bone on the other end.

TFH is a Delaware corporation with its principal place of business in New Jersey. In fall 2003, TFH pursued trademark status for a green dog bone treat that was shaped like a toothbrush. TFH called its product Nutri Dent. Upon learning of TFH's application for trademark protection, Nutec contacted TFH, but after extended discussions, the parties were unable to resolve their dispute. Nutec eventually filed suit against TFH for trademark and trade dress infringement.

### B.       Greenies

#### 1.       *Background and Development of Greenies*

In 1998, Nutec began selling green bone-shaped dog treats called Greenies, which were breath fresheners for dogs. Over time, Nutec has sold over 200,000,000 of its treats with total sales that exceed $148,000,000. The initial packaging for Greenies included a logo depicting a dog holding a green toothbrush-shaped dog treat in its mouth. Nutec refers to this logo as the "Mona Lisa" logo. The Mona Lisa logo has been granted protection by the USPTO.

Subsequently, Nutec modified the shape of the Greenies to reflect the toothbrush depicted in the logo. The new shape was formed like a knuckle on one end of the treat and a toothbrush on the other end and Nutec began selling the modified shape in November 2000.

---

Order. The absence of the symbol has no bearing on the validity of Nutec's mark nor does it reflect the Court's opinion regarding the validity of the mark.

2

This modified shape was designed only for the purpose of identifying and distinguishing Greenies from their competition. Since November 2000, Greenies have been this same shape, and they have continued to display the Mona Lisa logo, although TFH contends that Nutec has not consistently used the logo on its packaging.

### a. Greenies Packaging and Point of Sale Displays

As of January 2003, the packaging and point of sale materials for Greenies consisted of three components: a multi-pack bag that holds multiple treats, a box for dispensing individually wrapped treats, and a tower with shelves for displaying the bags and boxes. The multi-pack bags contain a variety of Greenies, ranging from petite to jumbo. The wrapping on the multi-pack bags includes a green, white, and tan color scheme; prominent display of a dog holding a toothbrush-shaped dog treat in its mouth; clear plastic portions of the bag that allow the consumer to see the Greenies treats; the term Greenies in green lettering; a "zip-lock" closure at the top of the package; and a green leaf displayed on the front of the package. The multi-pack bags may be displayed in the towers or hung from display arms or laid on shelving in retail stores and veterinary offices.

The boxes for dispensing individual Greenies may be positioned at several locations in retail stores. The individually-wrapped treats may be displayed on shelving, at the check-out counter, or stored in the towers. Nutec states that the following characteristics have always been present on the boxes for individually wrapped treats: a pull-out flap opening in the front side of the box to provide access to the treats; fan-shaped sides of the flap that are green; a green, white, and tan color scheme; the display of the Mona Lisa logo with a green

3

leaf behind it; the Greenies mark; and a clear plastic wrapping surrounding each individual Greenie.

### b.    Greenies Color and Name

Greenies have their color because of the ingredient chlorophyll.  To maintain a uniform color of green for all its treats, Nutec instituted quality control procedures to insure a consistent color.  Chlorophyll is available in colors other than green, although TFH argues that the other colors are rare and prohibitively expensive.

In developing the name "Greenies" for its dog treats, Nutec was concerned that the color of the treats was unappealing.  Nutec needed to place a positive spin on the unattractive color of the treats.  Galen Lillethourp ("Lillethourp") helped Nutec's founders, Joseph and Judy Roetheli ("the Roethelis"), devise a way to turn the color of the treats into a positive aspect of the product.  Lillethourp advocated using the color of the treats in the name.  After proposing numerous names for the treats that all incorporated the treats' color, Lillethourp eventually decided to use "Greenies."  In his deposition, Lillethourp testified that Greenies does not describe the treats--just their color.

In its advertising and promotional materials, Nutec highlights the nexus between the color of the treats and the trademark Greenies.  For example, Nutec uses two colors of text to spell out the word "Greenies" with the letters 'G' 'R' 'E' 'E' 'N' in the color green. Nutec's plush toys are also green and Nutec sponsors a promotional trip to Ireland with the catch phrase, "Think Green for January and win a trip to the Emerald Isle."

### d.    Greenies Advertising

4

Although Nutec does not frequently advertise in mass media, it does market Greenies through trade publications and trade shows where it hands out free samples. Nutec does not nationally advertise Greenies. Nutec initially began distributing Greenies via veterinarian offices and independent pet supply stores, but it now sells Greenies through Target and chain pet stores, such as Petco and PetSmart. Greenies are not sold in Wal-Mart stores. Nutec spent $982,236 on advertising in 2002 and $2,111,016 on advertising in 2003.

### 2. *Greenies Success*

According to a trade publication, Greenies are now the market leader in all forms of dog treats, not just canine dental treats. In 2001, Greenies sales were $5,857,547. Just two years later, Greenies sales had grown to $45,973,953. In addition to its financial success, Nutec has received numerous industry awards that recognized the success of Greenies as a new product in the dog treat market. Greenies have also been featured on the news program "Good Morning America" and displayed in the 2004 national broadcast of the Westminster Kennel Dog Show.

### 3. *Greenies Trademark*

In February 2003, Nutec filed an application to obtain trademark protection for the term Greenies. In September 2003, the United States Patent and Trademark Office ("USPTO") registered the term Greenies as the trademark for Nutec's dog treats; the mark is U.S. Trademark Registration No. 2,769,378. In its Counterclaim, TFH challenges this registration and argues that Greenies is a descriptive term that has not obtained secondary

5

meaning. If TFH succeeds on its argument, then the Greenies trademark will be cancelled.

### 4. *Greenies Trade Dress*

In its Third Amended Complaint, Nutec seeks protection for its composite trade dress, which is not formally registered with the USPTO. Nutec defines its trade dress as including the shape of the treats (a bone knuckle on one end with a toothbrush on the other end), the green color of the treats, and the "overall shape, proportions, and size of the Greenies." *See* Third Amended Complaint [Doc. # 66] at ¶ 10. Nutec also seeks protection for its packaging and display towers that it uses at point-of-sale retailers to the extent that those items incorporate and utilize the Greenies logo.

Nutec has attempted to obtain protection from the USPTO for various aspects of its purported trade dress. Nutec attempted to obtain USPTO protection for the color green by itself, but the USPTO rejected it as functional, although the determination is not yet final and the USPTO examiner has requested additional information regarding Greenies distinctiveness. In conjunction with another application, the USPTO examiner required Nutec to disclaim the color green from the purported mark because the color was functional. None of Nutec's USPTO applications have been finally rejected.

### C. Nutri Dent

In late 2003, TFH made known that it intended to market a dog treat called Nutri Dent. Nutri Dent is a shade of green that is comparable to Greenies. Like Greenies, Nutri Dent treats are manufactured using injection molding, which makes the surface of the treats smooth. Nutri Dent treats also have a knuckle on one end and the depiction of a toothbrush

6

on the other end, although TFH argues that the toothbrush on Nutri Dent treats are more realistic than Greenies.

Like the Mona Lisa logo, the logo for Nutri Dent treats depicts a dog with a toothbrush-shaped treat in its mouth and the logo utilizes a green and beige color scheme. The Nutri Dent packaging is comparable to Greenies in that TFH also uses multi-treat bags, individually wrapped bags, and tower displays to sell its treats.

### D. Procedural Posture

In its Third Amended Complaint [Doc. # 66], Nutec alleges that TFH violated the Lanham Act and the common law by infringing Nutri Dent's trademark and trade dress. Nutec seeks injunctive relief that precludes TFH from continuing to infringe the Greenies trademark and trade dress. Nutec also seeks an accounting of TFH's profits that it has derived from the Nutri Dent treat. TFH's pending Motion seeks summary judgment on all Counts of Nutec's Third Amended Complaint.

Nutec's pending Motion for Partial Summary Judgment seeks judgment on Counts II-VI of TFH's Counterclaim. Those counts are for: (1) declaratory judgment; (2) tortious interference with contract; (3) tortious interference with prospective economic advantages; (4) common law unfair competition; (5) violation of the Lanham Act; and (6) cancellation proceedings. In its response, TFH concedes that summary judgment is proper for Counts II-V; therefore, the Court will enter judgment in favor of Nutec on those counts. The only remaining summary judgment issue related to the counterclaim is TFH's effort to cancel Nutec's registration of its trademark Greenies.

7

## II.    TFH's Motion for Summary Judgment [Doc. # 164]

In its Third Amended Complaint against TFH, Nutec alleges that TFH is infringing and violating its trade dress in violation of the Lanham Act, 15 U.S.C. § 1125, and the common law [Doc. # 66].  Nutec demanded a jury trial in its Third Amended Complaint.

Trade dress is defined as "the total image of a product, the overall impression created, not the individual features."  *Home Builders Ass'n of Greater St. Louis v. L&L Exhibition Management, Inc.*, 226 F.3d 944, 947 (8th Cir. 2000) (citation omitted).  Trade dress, even though it is unregistered, is equally protected under Section 43(a) of the Lanham Act.  *Id.*; 15 U.S.C. § 1125(a).  An unregistered trade dress is entitled to protection under section 43(a) if (1) it is inherently distinctive or has acquired distinctiveness through secondary meaning; (2) it is primarily nonfunctional; and (3) its imitation would result in a likelihood of confusion on consumers' minds as to the source of the product.  *Insty*Bit, Inc. v. Poly-Tech Industries, Inc.*, 95 F.3d 663, 667 (8th Cir. 1996) (citations omitted).

In its Third Amended Complaint, Nutec defines its trade dress to include the shape of the Greenies treat (a knuckle on one end and a toothbrush shape on the other end), the green color, and the proportion and size of the treats.  *See* Doc. # 66 at ¶ 10.  TFH argues that this claimed trade dress does not meet any of the three requirements.

### A.    Functionality

A product feature is functional if "it is essential to the use or purpose of the article or if it affects the cost or quality of the article."  *Home Builders Ass'n*, 226 F.3d at 948 (citation omitted).  For purposes of trade dress infringement claims, there are two tests for

8

determining functionality: the traditional test and the competitive necessity test. *Dippin'*

*Dots v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1203 (11th Cir. 2004), *cert.*

*denied,* 125 S.Ct. 911 (2005) (citation omitted). Under the traditional test, a product

feature is functional "if it is essential to the use or purpose of the article or if it affects the

cost or quality of the article." *Id.* Under the competitive necessity test, which is also

called the aesthetic functionality test, a feature is functional if "the exclusive use of the

feature would put competitors at a significant non-reputation-related disadvantage." *Id.*

However, if a design is an "arbitrary embellishment primarily adopted for purposes of

identification and individuality," then the trade dress is not functional. *Gateway, Inc. v.*

*Companion Prods., Inc.*, 384 F.3d 503, 508 (8th Cir. 2004).

      In assessing functionality, courts look to "whether the collection of design

elements, taken as a whole, are functional, not whether individual elements of the trade

dress could be categorized as such." *Insty\*Bit*, 95 F.3d at 673; *Dippin' Dots, Inc. v. Frosty*

*Bites Distribution, LLC*, 369 F.3d 1197 (11th Cir. 2004), *cert. denied,* 125 S.Ct. 911

(2005); *Hartford House, Ltd. v. Hallmark Cards, Inc.*, 846 F.2d 1268, 1272 (10th Cir.

1988); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842 (9th Cir. 1987).

The policy underlying this approach is that "virtually every product is a combination of

functional and non-functional features and a rule denying protection to any combination of

features including a functional one would emasculate the law of trade dress infringement."

*Hartford House*, 846 F.2d at 1272 (citation omitted).

      In its Motion, TFH attacks the two core components of Nutec's alleged trade dress--

9

the Greenies shape and color--but TFH does not attack the trade dress in its entirety.[3]  In

fact, TFH argues that the Greenies shape is aesthetically functional while the color is

functional under both the traditional and aesthetic tests; thus, TFH would have the Court

apply two completely different tests to separate features of the aggregate trade dress,

presumably in an effort to nullify the trade dress in its entirety.

Nonetheless, even assuming that TFH had applied the proper standard for the Court's

inquiry, disputed issues of material fact would still preclude granting TFH's Motion on the

issue of functionality.

### 1.       Greenies Shape

In its Motion, TFH argues that the shape of Greenies (a bone knuckle at one end and

a toothbrush at the other end) is aesthetically functional; in other words, that TFH would

suffer a "significant non-reputation-related disadvantage" if it cannot use this shape in the

design of its treats.  *Dippin' Dots*, 369 F.3d at 1203.  TFH contends that the toothbrush

shape is functional because it provides an aesthetic cue to consumers that connotes dental

hygiene.  TFH argues that Nutec will be monopolizing the concept of canine dental health

hygiene if it is granted exclusive use of the toothbrush design.  In its brief, however, TFH

---

[3]TFH also attacks Greenies packaging and displays as being functional.  However, Nutec
states "Nutec is not asserting exclusive rights in the use of SURPs, boxes, or towers in the abstract."
*See* Doc. # 189 at p. 6.  A review of Nutec's Third Amended Complaint also reveals that they are not
seeking trade dress protection on the packaging displays themselves; instead, they are seeking trade
dress protection for the content of the packaging and displays.  Therefore, the Court will not consider
TFH's argument, particularly where the Greenies packaging is not part of Nutec's trade dress as it
defined it in its Third Amended Complaint.

does not offer specific facts or evidence to support its claim that it will be competitively disadvantaged. Given the absence of evidence of competitive disadvantage, the Court will deny TFH's Motion on the functionality of the Greenies shape. Furthermore, the Court is unconvinced that a toothbrush on a dog biscuit is functional. While a toothbrush is associated with human hygiene, it is not associated with dog hygiene.

### 2. *Greenies Color*

TFH also contends that the color green as used in Greenies is functional because it is the byproduct of chlorophyll, which is used to freshen the dog's breath, and it provides an aesthetic cue to consumers that connotes freshness and minty flavor. In this respect, TFH argues that the color green is functional under both the traditional functionality test and the aesthetic functionality test.

### a. Traditional Test

To support its claim that the green color in Greenies is functional under the traditional test, TFH points to the USPTO's rejection of Nutec's attempts to register its green color because it is functional. TFH argues that the USPTO's rejection of the green color in Greenies is evidence that it is functional. TFH also asserts that the Greenies color is functional because it is a byproduct of the chlorophyll ingredient.

In its opposition, Nutec disputes that the USPTO has found that the color green is functional because the USPTO has requested more information regarding Greenies distinctiveness and its determination is not yet final. Nutec also argues that other ingredients besides chlorophyll may be used to freshen dogs' breath. Moreover, Nutec

11

asserts that chlorophyll is available in other colors besides green, although TFH responds by alleging that non-green chlorophyll is prohibitively expensive, rare, and not effective at freshening dogs' breath.

The Court finds that there are disputed issues of material fact about whether the Greenies color is "essential to the use or purpose of the article or if it affects the cost or quality of the article." *Dippin' Dots*, 369 F.3d at 1203 (citation omitted). Nutec has presented factual arguments that the chlorophyll in Greenies is not an essential ingredient for freshening dogs' breath and that other forms of chlorophyll may be substituted for green chlorophyll. Whether those alternative forms of chlorophyll are viable options or whether alternative chlorophyll is prohibitively expensive are clearly in dispute, precluding summary judgment.

### b.      Aesthetic Test

TFH also asserts that the Greenies color is aesthetically functional because green is a cue to consumers that connotes breath freshening and natural ingredients, both of which are attractive characteristics of dog treats.

In support of its argument, TFH does not offer citations to the record in this case nor does it offer demonstrable evidence to support its claim. Instead, it appears that TFH wants the Court to take judicial notice of the fact that green connotes breath-freshening qualities. Although another court has found that green connotes mint in the mouthwash context, *see Warner Lambert Co. v. McCrory's Corp.*, 718 F. Supp. 389 (D.N.J. 1989), that has no bearing on dog treats or consumers' impressions of the color green vis-a-vis pet

12

treats. TFH does offer testimony that states green represents natural ingredients, but those statements are conclusory and self-serving because they are offered by TFH's representatives. Given the dearth of objective factual evidence to support TFH's argument, the question of what the color green "means" in the eyes of consumers is appropriate only for a jury to consider.

### B. Secondary Meaning

A trade dress user establishes secondary meaning by showing that as a result of "long and exclusive use . . . the mark has become so associated in the public mind with such goods that the dress serves to identify the source of the goods and to distinguish them from those of others." *First Bank v. First Bank System, Inc.*, 84 F.3d 1040, 1045 (8th Cir. 1996) (quoting *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 870 (8th Cir. 1994)). The question in determining secondary meaning is "whether the mark has become associated with a particular source in the consumer's mind." *Id.* (citation omitted).

Courts consider a range of factors in determining whether trade dress has acquired secondary meaning. Those factors include: (1) length and exclusivity of use of the trade dress; (2) consumer surveys; (3) deliberate copying of the trade dress; (4) advertising that features the trade dress at issue; (5) expenditures on advertising; and (6) anecdotal evidence showing consumer identification of trade dress with its source. *Stuart Hall Co., Inc. v. Ampad Corp.*, 51 F.3d 780, 789-90 (8th Cir. 1995). Although not explicitly listed in *Stuart Hall*, the amount of sales and number of consumers is also an appropriate factor in evaluating secondary meaning. *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 761 n.9 (6th

13

Cir. 2005) (citing *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 640 n.14 (6th Cir. 2002)).  Secondary meaning is neither proved nor disproved by any one factor; instead, the jury must consider the combination of all the factors.  *PAF S.r.l. v. Lisa Lighting Co.,* 712 F. Supp. 394, 403 (S.D.N.Y. 1989 (citation omitted).

To be protectable, the trade dress must have obtained secondary meaning before the alleged infringement begins.  *Co-Rect Products, Inc. v. Marvy! Advertising Photography, Inc.*, 780 F.2d 1324, 1330 (8th Cir. 1985).  In this case, TFH launched its competing dog treat in December 2003; therefore, the issue before the Court is whether Nutec's Greenies had obtained secondary meaning in December 2003.

### 1. *Consumer Surveys*

In support of its argument that Greenies do not have secondary meaning, TFH offers consumer surveys conducted by two of its retained experts, James Berger ("Berger") and Robert Klein ("Klein").  TFH argues that Berger's and Klein's surveys demonstrate that consumers do not associate Greenies with Nutec, which is the source of the dog treats.  Although Nutec did not conduct consumer surveys as part of its *prima facie* case, it did retain an expert to refute the findings of Berger and Klein.  Nutec's expert challenges the methodology used by Berger and Klein and the rebuttal expert conducted his own survey, which purports to reach different conclusions.  Credibility determinations are to be determined by a jury; therefore, the weight to be given to these surveys is in dispute.

### 2. *Nutec's Advertising*

#### a. **Content of Advertising**

TFH argues that Nutec's advertising of Greenies fails to consistently underscore the link between Greenies and their source, *i.e.*, Nutec. Instead, according to TFH, Nutec focuses its advertising efforts on seasonal promotions that vary the use of the word "Greenies" instead of consistently using the purported trade dress. Nutec claims that it consistently uses the logo with the dog holding the bone in its mouth on its packaging and display materials.

### b. Advertising Expenditures

TFH points out that Nutec does not engage in any television, newspaper, or magazine advertising, and that it only performs a minimal amount of radio advertising in the Kansas City radio market. Nutec responds by arguing that it focuses its advertising resources on trade shows and point-of-sale displays in retail stores. Moreover, Nutec argues that it promotes Greenies through promotional giveaways--not just media-driven marketing.

TFH argues that Nutec's advertising expenditures were *de minimis*. From 1998 through 2000, TFH alleges that Nutec spent a combined total of $54,439 on advertising and promotions. In 2001, TFH alleges that Nutec spent only $181,265 on advertising. TFH does not dispute that Nutec's advertising expenditures increased substantially and that Nutec spent $982,236 on advertising in 2002 and $2,111,016 in 2003.

### 3. Length and Exclusivity of Use

TFH argues that Greenies were not introduced into interstate commerce until 2000. Although Nutec asserts that it introduced Greenies into commerce in March 1998, it concedes that it did not begin using the trade dress in dispute until November 2000. Nutec

15

asserts that it has exclusively used the trade dress at issue since November 2000.

### 4. Amount of Sales and Number of Customers

Nutec's evidence shows that in 2001, Greenies sales were $5,857,547 and by the

end of 2003 the sales were $45,973,953. TFH argues that Nutec's asserted sales figures

are higher than this amount but does not allege what it believes to be the proper sales

figure. A trade publication in 2003 listed Greenies as the market leader of sales at retail

for all dog treats, not just dental treats.

### 5. Anecdotal Evidence

Nutec offers consumer statements in support of its assertion that Greenies have

obtained secondary meaning in the marketplace. In addition to the consumer statements,

Nutec offers statements from employees of the retail outlets that sell Greenies as proof

that consumers associate Greenies with Nutec. For example, Nutec presents evidence that

customers ask retailers about the distinction between the two products, and its retailers are

confused between Greenies and Nutri Dent when they try to redeem coupons. In addition

to consumer anecdotes, Nutec also offers the awards it has received and the publications

that feature its treats. TFH disputes the value of this evidence, but the value and inferences

to be drawn from this evidence is for the jury.

### 6. Intentional Copying

Nutec claims that TFH targeted Greenies and maliciously copied its trade dress in an

effort to undermine Nutec's sales. In support of its argument, Nutec points to the

similarity between the designs, their logos, and the dearth of information in TFH's

16

produced documents regarding the creative process whereby TFH developed the design for its competing Nutri Dent. Nutec also points to several circumstantial pieces of evidence that might suggest TFH was focusing on the Greenies product. Instead of refuting Nutec's evidence, TFH argues it is not relevant to an inquiry regarding secondary meaning.

### 7. Summary

Whether a trade dress has obtained secondary meaning is traditionally a fact issue that will preclude summary judgment. *Stuart-Hall Co. v. Ampad Corp.*, 51 F.3d 780, 784 (8th Cir. 1995) (citing *Aromatique*, 28 F.3d at 868). In light of this fact and based on a review of the foregoing, the Court concludes that there are disputed issues of material fact regarding the weight to be given to TFH's consumer surveys that are contained in its expert reports, Nutec's advertising methods and the amount of its expenditures, and TFH's alleged intentional copying of the Greenies trade dress. Given that there are disputed issues of material fact on three of the six factors that bear on secondary meaning, summary judgment is inappropriate and the Court denies TFH's Motion on that point.

### C. Likelihood of Confusion

In assessing whether there is likelihood of confusion, courts consider (1) the strength of the owner's trade dress; (2) similarity between the competing trade dresses; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to "pass off" its goods as those of the trade dress owner[4]; (5) incidents of actual confusion;

---

[4] The Court has already evaluated TFH's alleged intent regarding its product and determined that there is a material issue of fact on that issue. Therefore, further discussion is unnecessary.

17

and (6) the type of product, its costs and conditions of purchase. *Kemp v. Bumble Bee Seafoods, Inc.*, 398 F.3d 1049, 1053 (8th Cir. 2005) (citing *SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980)). The outcome of the issue does not hinge on a single factor. *SquirtCo.*, 628 F.2d at 1091.

### 1. Incidents of Actual Confusion

Again, TFH points to the lack of consumer surveys offered by Nutec to support its claim that Nutec cannot establish a likelihood of confusion between the products. Nutec offers e-mails from consumers who purport to be confused about the distinction between Greenies and Nutri Dent. Moreover, Nutec offers anecdotal statements from employees of its retail purchasers about confusion by the retailers' customers. TFH disputes these examples and argues that the proffered incidents of confusion are immaterial and inconsequential.

### 2. The Degree of Competition Between Nutri Dent and Greenies

TFH argues that its targeted channels of trade are distinct from Nutec's. TFH states that it has always targeted large retail outlets, while Nutec has traditionally targeted veterinarians and independently owned stores, although TFH concedes that Nutec is starting to market its product to large retail chains such as Target, Petco, and PetSmart. TFH does, however, argue that it is significant that Nutec does not sell Greenies to Wal-Mart stores, while TFH does sell Nutri Dent bones there. TFH concedes that educated women are the target audience for both TFH and Nutec. Additionally, both parties concede that they are providers of premium dog treats.

18

### 3.    Strength of Nutec's Trade Dress

TFH argues that Nutec's trade dress in the Greenies materials is weak while Nutec asserts that it is strong.  As a practical matter, the strength of the Greenies trade dress is inherently intertwined with whether it has obtained secondary meaning and the Court has already outlined numerous disputes over material facts regarding that issue.

### 4.    Similarity Between the Competing Trade Dresses

TFH argues that Nutri Dent is markedly distinct from Greenies because the products' dissimilar names are "splayed across the packaging unavoidably."  *See* Def.'s Suggestions in Support [Doc. # 165] at p. 31.  Nutec asserts that the products are very similar because of the shape of the treats, the similarities in marketing, and the product placement within the store.  Nutec argues that the distinct names of the products do not distinguish them in light of the similarity between the shape and color of the treats themselves.

### 5.    Summary

Whether a trade dress and an allegedly infringing trade dress create the likelihood of confusion is usually a fact issue that will preclude summary judgment.  *Stuart-Hall Co.,* 51 F.3d at 784 (citing *Aromatique*, 28 F.3d at 868).  Of the six factors the Court determines in weighing the likelihood of confusion, there are disputed issues of material fact regarding the degree of similarity between the parties' trade dresses, the strength of Nutec's trade dress, TFH's intent in creating Nutri Dent, and the incidents of actual confusion.  Thus, summary judgment is inappropriate on this point.

19

**D.     Conclusion**

The Court finds that there are material issues of disputed fact regarding the functionality of Nutec's trade dress, whether it has acquired secondary meaning, and whether there is a likelihood of confusion between Greenies and Nutri Dent. Given these disputed facts, summary judgment is not appropriate.

**III.     Nutec's Motion for Summary Judgment [Doc. # 162]**

In its Counterclaim, TFH alleges that Nutec's Greenies trademark is descriptive and that it has not obtained secondary meaning.[5] TFH also alleged that Nutec's Greenies trademark was generic, but TFH does not address this allegation in its opposition briefs; therefore, the Court will presume that TFH is abandoning this allegation.

**A.     Registration Presumption**

The parties do not dispute that the term Greenies is a registered trademark with the USPTO for Nutec's dog treats. Greenies was registered in September 2003 and its registration number is 2,769,378.

If a trademark is registered on the USPTO's registry, then the registration is *prima facie* evidence that the trademark is valid. 15 U.S.C. § 1115(a). Registration serves as presumptive proof that the mark is neither generic nor descriptive. *WSM, Inc. v. Hilton*,

---

[5]In its brief, TFH also alleged that Nutec obtained the Greenies trademark through fraud or deceit. However, this basis for cancellation of the Greenies trademark was not averred in TFH's Counterclaim or during discovery and TFH does not offer any primary authority suggesting that the Court should consider this basis at such a late stage. Therefore, the Court will not consider this alleged basis for cancelling the Greenies trademark.

724 F.2d 1320, 1325 (8th Cir. 1984). This presumption gives rise to a burden-shifting

effect wherein a party challenging a registered mark must produce sufficient evidence to

establish that the mark is descriptive by a preponderance of the evidence. *Retail Services,*

*Inc. v. Freebies Publishing*, 364 F.3d 535, 542 (4th Cir. 2004) (citations omitted). *See*

*also Sengoku Works, Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217 (9th Cir. 1996); *Burke-*

*Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590 (6th Cir. 1989).

The burden that shifts is one of production and not persuasion. *Retail Services*, 364 F.3d at

542. If the challenging party presents sufficient evidence of descriptiveness, then the

presumption is dropped, although evidence to support the presumption is still considered.

*Id.* at 543.

### B.    Descriptiveness

A mark is descriptive if it designates the characteristics, qualities, effects, or

features of the product and it is protectable only if it has obtained secondary meaning. *Two*

*Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Put another way, a descriptive

mark is one that "immediately conveys the nature or function of the product." *Duluth*

*News-Tribune, a Division of Northwest Publications, Inc. v. Mesabi Publishing Co.*, 84

F.3d 1093, 1096 (8th Cir. 1996). If a term conveys an immediate idea of the ingredients,

qualities or characteristics of the product, then it is descriptive. *Stix Prods., Inc. v. United*

*Merchants and Manufacturers, Inc.*, 295 F. Supp. 479, 485 (S.D.N.Y. 1968); 1 J. Thomas

McCarthy, *Trademarks and Unfair Competition*, § 11:67 (2nd ed. 1984).

Whether a mark is descriptive is traditionally a question of fact. *WSM*, 724 F.2d at

21

1326; *Packman v. Chicago Tribune Co.*, 267 F.3d 628 (7th Cir. 2001); *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341 (Fed. Cir. 2001); *EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56 (2nd Cir. 2000). Therefore, summary judgment is inappropriate unless the challenging party has failed to produce sufficient evidence from which a reasonable jury could determine that a mark is descriptive.

Nutec argues that the term "Greenies" is not descriptive because it is a variation on a word that does not immediately convey the nature of the goods. According to Nutec, it requires "imagination or thought to recognize that [the term Greenies] is suggestive of green pet treats." *See* Doc. # 163 at p. 21. One of Nutec's marketing experts described the terms as "fanciful. Open for connotation. Flexible - allows for growth into other categories." *Id.* Thus, according to Nutec, the term Greenies is not descriptive because it does not immediately convey the nature of the goods with which it is associated. Moreover, Nutec's competitors do not need to use the term Greenies or a variation of the term to describe their products, thereby reinforcing Nutec's position that the term is arbitrary.

To support its argument that the term Greenies is merely descriptive of Nutec's dog treats, TFH has offered evidence that the term is a depiction of the color of the treats, as well as a way to reflect a key ingredient in the treats, which is chlorophyll. TFH proffered testimony from Lillethourp and other Nutec employees who admitted that the name of the product was intended to describe the color of the treat and that the name derived from the

22

color. According to TFH's evidence, Nutec initially considered the color of the treat as a negative image because it was a dark green color. However, the company worked on numerous names and with various experts to develop the term Greenies in an attempt to build positive rapport for the product out of the color, thereby turning a negative feature of the treats into a positive feature.

Moreover, TFH argues that Nutec highlights the nexus between the term Greenies and the color of the treats by marketing the green color. For example, Nutec uses two colors of text to spell out the word "Greenies" with the letters 'G' 'R' 'E' 'E' 'N' in the color green. Also, Nutec's plush toys are green and Nutec sponsors a promotional trip giveaway to Ireland to highlight its association with the color. Thus, according to TFH, the name was not arbitrary but, instead, it was intended to describe a characteristic of the treats.

Based on both parties' arguments, whether the term Greenies was a variation that derived from the treats' color or it was created as an arbitrary name is a disputed issue of material fact. Additionally, whether the term Greenies describes a characteristic of the treats is also a material issue of fact for a jury to consider and ultimately decide. Like most of the issues presented herein, the jury's decision will turn on the credibility of the witnesses and the strength of the parties' respective evidence.

C.      **Secondary Meaning**

A descriptive term is still protectable if it has acquired secondary meaning. *Home Builders Ass'n of Greater St. Louis*, 226 F.3d at 949 (citation omitted). Both parties submit much of the same evidence outlined in TFH's Motion above. The Court has already

determined that there are genuine issues of material fact that are in dispute regarding

Greenies secondary meaning in the marketplace. Accordingly, the Court denies summary

judgment on this point.

### D.    Conclusion

Based on the foregoing, the Court finds there are material issues of disputed fact

regarding whether the registered trademark of Greenies is descriptive and whether it has

obtained secondary meaning. Accordingly, the Court denies Nutec's Motion for Partial

Summary Judgment on Count VI of TFH's Counterclaim. However, based on the

concessions in TFH's opposition briefs, the Court will grant Nutec's Motion for Partial

Summary Judgment on Counts II-V of TFH's Counterclaim.

## IV.    Conclusion

Accordingly, it is hereby

(1)    ORDERED that TFH's Motion for Summary Judgment [Doc. # 164] is

DENIED;

(2)    ORDERED that Nutec's Motion for Partial Summary Judgment [Doc. #

162] is GRANTED as to Counts II-V of TFH's Counterclaim;

(3)    ORDERED that Nutec's Motion for Partial Summary Judgment [Doc. #

162] is DENIED as to Count VI of TFH's Counterclaim.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

DATE: May 23, 2005

24

Kansas City, Missouri